IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DAVID WILLIAMS,

                Plaintiff,              OPINION AND ORDER

v.

                                          19-cv-681-wmc

TIMOTHY THOMAS, DAN HUNEKE,
ERIC PETERS, LARRY FUCHS, ROSLYN
HUNEKE, and KARL HOFFMAN, in their
individual capacities.

                Defendants.

---

      Plaintiff David Williams filed this lawsuit under 42 U.S.C. § 1983, claiming he was unlawfully denied a single-occupancy cell despite medical issues that made sharing a cell dangerous for him. Williams has filed a second amended complaint (dkt. #22-1), adding Karl Hoffman as a defendant and clarifying that he is suing all defendants in their individual capacities, rather than individual and official capacities. Because Williams has sufficiently alleged an Eighth Amendment deliberate indifference claim to a serious medical harm, he may proceed against all defendants.

BACKGROUND

      David Williams is an inmate at New Lisbon Correctional Institution (NLCI) in New Lisbon, Wisconsin. Williams is legally blind: his left eye is prosthetic; and his right eye has no lens, a non-dilating pupil, and poor peripheral vision. Doctors have further warned Williams that head trauma could result in retinal detachment and permanent blindness. Williams claims that all parties in this case were at all times aware of his medical condition, including the dangers he faces from head trauma.

Williams resides in a dual-occupancy cell, which includes bunk beds, a desk, a storage cabinet, two chairs and a toilet. There is minimal floor space and Williams sleeps in the bottom bunk due to his disability. In his cell, Williams is at risk of hitting his head on the top bunk when sitting or standing, getting kicked in the head by his cellmate when exiting the top bunk, and tripping over various hazards. Among other things, trip hazards include furniture, shoes, Williams' cellmate's prayer rug, and power cords.

Williams is housed in the C-Unit at NLCI, which houses inmates returning to the general population after segregation or after arriving at the facility. As a result, Williams has been housed with at least two different cellmates who were returning from segregation after attacking their prior cellmates. There have been several disagreements between Williams and his various cellmates because he must keep the overhead light on in the cell constantly due to his vision challenges, increasing the risk of verbal and physical conflict.

On April 4, 2018, Williams met with Dr. Sara Pastryk, an eye doctor at NLCI. She recommended that Williams be placed into a single-occupancy cell in the Chronological Record of Eyecare Case Management. A second note recommending a single-occupancy cell was entered in the record on May 2, 2018. On May 7, 2018, Williams wrote to defendant Fuchs requesting a single-occupancy cell, but his request was denied the next day. Williams next filed an inmate complaint regarding the denial, then appealed the complaint when it was dismissed. That appeal was also dismissed, which was finally upheld on July 13, 2018.

On December 5, 2018, Dr. Pastryk again recommended a single-occupancy cell. On February 7, 2019, Williams met with Dr. Nayan Patel of the UW Health University

Station Ophthalmology Department, who also recommended a single-occupancy cell. This request was reviewed by defendant Hoffman, and defendant Roslyn Huneke later completed a single-occupancy cell recommendation on behalf of Williams. While Roslyn noted that Williams was worried about getting assaulted and losing vision, she failed to note the separate trip hazards that any dual-occupancy cell would entail for him. Defendants Dan and Roslyn Huneke, Peters and Fuchs all reviewed the cell recommendation, with each concluding Williams was not entitled to a single-occupancy cell.

Williams next saw Dr. Sanbrita Mondal on July 31, 2020, who once again recommended he be given a single cell. Nevertheless, Hoffman, Thomas and Dan and Rosyln Huneke reviewed Dr. Mondal's recommendation, only to once more deny Williams a single-occupancy cell. Williams remains housed in a dual-occupancy cell to this day.

MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

As an initial matter, plaintiff has requested leave to file a second amended complaint, which defendants have not opposed. Leave to file an amended complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Here, no apparent or declared reason stands in the way of plaintiff's request to amend his complaint, as defendants consented to plaintiff's amendment. Accordingly, the court will grant plaintiff's motion to amend his complaint, making his proposed complaint at docket #22-1 the operative pleading. In the same motion, Williams also asked to stay all deadlines pending screening. Given that the court has screened that complaint, that motion would ordinarily be denied. However, since the essential facts do not appear to be in dispute in this matter,

and appear capable of resolution on summary judgment, the court will strike all deadlines and give the parties until January 30, 2023, to file dispositive motions. Failing that, the parties must demonstrate by that date why the court cannot resolve this case as a matter of law on stipulated facts.

Although the court screened Williams' first amended complaint (dkt. #8), the court must also screen the second amended complaint under 28 U.S.C. § 1915(e)(2) to determine whether he may proceed. Williams again brings a single claim of Eighth Amendment deliberate indifference to serious medical harm. The Eighth Amendment imposes a duty on prison officials to provide "humane conditions of confinement" and to insure that "reasonable measures" are taken to guarantee inmate safety and prevent harm. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994). An inmate may prevail on a claim under the Eighth Amendment by showing that the defendant acted with "deliberate indifference" to a "substantial risk of serious harm" to his health or safety. *Id*. at 836. "Deliberate indifference occurs when a defendant realizes that a substantial risk of serious s harm to a prisoner exists, but then disregards that risk." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (citing *Farmer*, 511 U.S. at 837). A substantial risk of serious harm is "so great" that it is "almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005).

As noted, the court previously found that Williams had sufficiently alleged an Eighth Amendment claim, as his statements about doctor recommendations and what the defendants knew were "sufficient to show that each of the individual defendants knew of the substantial risk of harm posed to Williams by his placement in a double-occupancy cell

4

and consciously disregarded that risk when they denied his request." (Dkt. #8.) The addition of Karl Hoffman as a defendant does not change this analysis, as he, too, knew of plaintiff's medical condition and was a part of the decision to deny a single-occupancy cell. If anything, the addition of Hoffman as the medical provider reviewing each recommendation supports Williams' contention that the defendants were aware of his medical risks and the fact that third-party providers had recommended a single-occupancy cell. Further supported by the more fulsome Eighth Amendment analysis in the court's previous screening order (dkt. #8), Williams is granted leave to proceed on his second amended complaint.

## ORDER

IT IS ORDERED that:

1) Plaintiff's motion to amend complaint and stay deadlines (dkt. #22) is GRANTED.

2) Parties' joint motion to stay all deadlines pending screening (dkt. #23) is GRANTED. The parties have until January 30, 2023, to either file (1) a motion for summary judgment, or (2) demonstrate why the court cannot resolve this case as a matter of law on stipulated facts

3) Plaintiff is GRANTED leave to proceed on his Eighth Amendment indifference claim. (*See* dkt. #22-1.)

Entered this 13th day of December, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge